**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**MICHAEL DEVONE KENDRICK**,

      Petitioner,

v.                                                Civil Action No. **3:19CV594**

**HAROLD W. CLARKE,**

      Respondent.

**MEMORANDUM OPINION**

Michael Devone Kendrick, a Virginia state prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 11), challenging his convictions in the Circuit Court of Fauquier County, Virginia ("Circuit Court"). Kendrick lists two claims in his § 2254 Petition; however, each claim consists of a rambling narrative comprised of several different claims. The Court attempts to separate these appropriately. Kendrick argues that he is entitled to relief based upon the following claims: [1]

Claim One:    Counsel rendered ineffective assistance when counsel failed to "address violations of the Fourth Amendment . . . when counsel failed to file any search and seizure pretrial motions, search and seizure suppression motions, and failed to object to any search and seizure issues during trial" (ECF No. 11, at 6), on the grounds that:
(a) he "was both strip[] searched and body cavity searched," illegally, on the side of the road (*id.*); and,
(b) the inventory search of his vehicle was illegal. (*Id.* at 10, 14.)

Claim Two:    Counsel rendered ineffective assistance when she "failed to object to the prosecution's knowing[] use of false testimony" (*id.* at 15) provided by Officer Schrock about:
(a) when he learned that Kendrick was driving with a suspended license (*id.*);

---

[1] The Court corrects the spelling, punctuation, and capitalization in the quotations from Kendrick's submissions. The Court employs the pagination assigned by the CM/ECF docketing system to Kendrick's submissions.

(b) the speed Kendrick was driving (*id.* at 16); and,

(c) the search of Kendrick and the vehicle (*id.* at 15–16).

Respondent moves to dismiss on the grounds that Claim One (a) is procedurally defaulted and barred from review here, and the remaining claims lack merit.  Kendrick filed a response.  For the reasons set forth below, the Motion to Dismiss (ECF No. 18) will be GRANTED, and the § 2254 Petition will be DENIED.

## I.   PROCEDURAL HISTORY

After a jury trial and a guilty plea,[2] Kendrick was convicted of distribution of heroin, possession of heroin, possession of hydromorphine, possession of a Schedule III controlled substance, and driving on a revoked/suspended license, ninth offense.[3] (ECF No. 20–1, at 1.)  The Circuit Court sentenced Kendrick to an active term of fifteen years and twenty-four months of incarceration.  (*Id.* at 5.)

On appeal, Kendrick, by counsel, argued that the Circuit Court abused its discretion by sentencing him to thirty-seven years in prison with twenty years suspended.  (ECF No. 20–2, at 1.)  In a *pro se* supplemental petition for appeal, Kendrick also argued that the Circuit Court "erred by allowing the Commonwealth 'to submit evidence in violation of the 4th Amendment's prohibition against illegal search and seizure'" and "erred by denying his motion to strike 'based on insufficient evidence.'"  (*Id.* at 2–3.)  On July 16, 2015, the Court of Appeals of Virginia found

---

[2] Kendrick separately pled guilty to the charge of distribution of heroin.  However, Respondent notes that Kendrick does not appear to challenge that conviction in his habeas petition.  The Circuit Court combined the sentencing for both the charge he pled guilty to and the charges he was convicted of by the jury.  (ECF No. 20–1, at 1–3.)

[3] Virginia Code section 46.2–301 (West 2020) criminalizes both driving on a revoked license and driving on a suspended license, and Kendrick's sentencing Order does not distinguish between the two.  (*See* ECF No. 20–1.)  The Court notes that the Circuit Court uses these terms interchangeably throughout the record.  For the sake of consistency, this Court refers to Kendrick's conviction as one for driving on a suspended license.

his petition for appeal "wholly frivolous." (*Id.* at 1.)  It determined that the claims in the *pro se* supplemental petition for appeal could not be considered on the merits because the arguments were not presented to the trial court, and that Kendrick "failed to show that a miscarriage of justice occurred." (*Id.* at 1–4.)  On June 10, 2016, the Supreme Court of Virginia dismissed the petition for appeal because Kendrick failed to assign error to the rulings of the Court of Appeals of Virginia. (ECF No. 20–3, at 1.)

On September 12, 2017, Kendrick filed a petition for writ of habeas corpus in the Circuit Court raising the following claims:

1. His counsel was ineff[ective] for failing to file any Motion to Suppress his search and seizure which included a strip search and an inventory search of his motor vehicle, and
2. Counsel was ineffective because he (she) failed to address Petitioner's constitutional rights violations that contradicted the officer's testimony as shown by events contained in a "dash cam" video.

(*See* ECF No. 20–4, at 1.)  By Order dated December 6, 2017, the Circuit Court explained:

Under the case of *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny the Petitioner must show that his attorney's performance was seriously deficient and that he was prejudiced as a result.

While the strip search, if proven, would be humiliating, there was nothing alleged that would show that any evidence was recovered as a result of the alleged search.  Thus, there was no legal prejudice to the Petitioner.

However, the Petitioner attached a portion of the transcript to his Motion showing the deputy conducted a search and seizure of the Petitioner's automobile recovering numerous drug baggies and residue of opiates in secret containers.

These items were recovered as the result of an inventory search without a warrant under the community caretaker exception to the Fourth Amendment to the Constitution.  However, there was no evidence in the transcript that the car was lawfully impounded or that the search was conducted pursuant to standard police procedures, or that the search was not pretextual under *Williams v. Commonwealth*, 42 Va. 723 (2004)

Therefore[,] this portion of the Petition will be set for a plenary hearing and counsel will be appointed to represent the Petitioner.

Concerning the balance of the allegations[,] the Petitioner has failed to demonstrate that the officer's testimony was false or that the Petitioner was prejudiced as a result.  Thus, the second item of the Petition is denied.

3

(*Id.* at 1–2.)  The Circuit Court appointed counsel for Kendrick (*id.* at 2) and held an evidentiary

hearing on the second aspect of Claim 1.  (June 11, 2018 Tr. 4.)  On September 6, 2018, the Circuit

Court issued an opinion letter indicating that the habeas corpus petition would be denied for lack

of merit.  (ECF No. 20–5, at 6–10.)  On September 25, 2018, the Circuit Court entered a Final

Order denying the habeas petition for the reasons provided in the opinions entered on December

6, 2017 and September 6, 2018.  (*Id.* at 1–5.)

Kendrick, by counsel, filed a petition for appeal in the Supreme Court of Virginia.  (ECF

No. 20–6.)  Kendrick raised the following assignments of error:

> A.  First Assignment of Error.  The Trial Court Erred in Holding that the
> Strickland v. Washington, two prong test for granting a Writ of Habeas Corpus was
> not met because a motion to suppress would have been defeated due to lawful
> Vehicle Impoundment.
> B.  Second Assignment of Error.  The Trial Court Erred in Holding that the
> Strickland v. Washington, two prong test for granting a Writ of Habeas Corpus was
> not met because a motion to suppress would have been defeated due to Exigent
> Circumstances.
> C.  Third Assignment of Error.  The Trial Court Erred in Holding that the
> Strickland v. Washington, two prong test for granting a Writ of Habeas Corpus was
> not met because a motion to suppress would have been defeated due to Inevitable
> Discovery.

(*Id.* at 11–12 (internal citations omitted).)  On July 1, 2019, the Supreme Court of Virginia

determined that "there is no reversible error in the judgment complained of" and refused the

petition for appeal.  (ECF No. 20–7, at 1.)[4]

On August 14, 2019, the Court received Kendrick's original § 2254 petition.  (ECF No. 1.)

By Memorandum Order entered on  September 19, 2019, the Court directed Kendrick to complete

and return the standardized form for filing a § 2254 petition.  On November 20, 2019, the Court

---

[4] The decision of the Circuit Court was the last reasoned state court decision addressing these
claims, and its reasoning is imputed to the Supreme Court of Virginia, which refused further review
without discussion.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

received Kendrick's standardized § 2254 Petition which supplanted the original § 2254 petition. (ECF No. 11.)

## II.    EXHAUSTION AND PROCEDURAL DEFAULT

Before a state prisoner can bring a § 2254 petition in federal district court, the prisoner must first have "exhausted the remedies available in the courts of the State."   28 U.S.C. § 2254(b)(1)(A).  State exhaustion "is rooted in considerations of federal-state comity," and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'"  *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491–92 & n. 10 (1973)).  The purpose of exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted).  Exhaustion has two aspects.  First, a petitioner must utilize all available state remedies before he can apply for federal habeas relief.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844–48 (1999).  As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate opportunity to address the constitutional claims advanced on federal habeas.  "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995)).  Fair presentation demands that "both the operative facts and the controlling legal principles" must be presented to the state court.

*Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (quoting *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)).  The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner.  *Mallory v. Smith*, 27 F.3d 991, 994–95 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default."  *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).  This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)).  A federal habeas petitioner also procedurally defaults claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (quoting *Coleman*, 501 U.S. at 735 n. 1).[5]  The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases).  Absent a showing of "cause for the default and actual prejudice as a result of the alleged violation of federal law," or a showing that "failure to consider the claims will result in a fundamental miscarriage of justice," this Court cannot review the merits of a defaulted claim.  *Coleman*, 501 U.S. at 750; *see Harris v. Reed*, 489 U.S. 255, 262 (1989).

To exhaust his claims, Kendrick was required to present properly these claims to the Supreme Court of Virginia.  Kendrick did not present Claim One (a) to the Supreme Court of

---

[5] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)).

Virginia either on direct appeal or in his habeas appeal.   If Kendrick now attempted to raise Claim

One (a) in the Supreme Court of Virginia in a habeas petition, that habeas petition would be barred

as successive pursuant to section 8.01–654(B)(2) of the Virginia Code, and as untimely pursuant

to section 8.01–654(A)(2) of the Virginia Code.   Virginia's statute of limitations for habeas actions

and the bar on successive habeas petitions are adequate and independent procedural rules when so

applied.   *See Clagett v. Angelone*, 209 F.3d 370, 379 (4th Cir. 2000); *Sparrow v. Dir., Dep't of

Corr.*, 439 F. Supp. 2d 584, 587–88 (E.D. Va. 2006).[6]   Thus, Claim One (a) is barred from review

here unless Kendrick demonstrates cause for the default of his claim.

Respondent acknowledges that, under *Martinez v. Ryan*, 566 U.S. 1 (2012), ineffective

assistance of counsel "at initial-review collateral proceedings may establish cause for a prisoner's

procedural default of a claim of ineffective assistance at trial."   *Id.* at 9.   However, *Martinez* fails

to excuse the default in Claim One (a), which was squarely presented at his initial-review collateral

proceeding and was rejected by the Circuit Court.   Instead, this claim is defaulted because

Kendrick failed to properly raise it before the Supreme Court of Virginia on a collateral appeal.[7]

The explicit language of *Martinez* indicates that its holding applies only to the initial-review

collateral proceeding for raising claims of trial counsel error.   *See Atkins v. Holloway*, 792 F.3d

---

[6] Kendrick's sole assignment of error on direct appeal to the Supreme Court of Virginia was very broad.  Kendrick stated: "The trial court committed reversible error when it denied Defendant's motion to strike based on insufficient evidence."   Petition for Appeal at ii, *Kendrick v. Commonwealth*, No. 151218 (Va. Aug. 11, 2015) (capitalization corrected).   While broad in scope, this assignment of error did not encompass the ineffective assistance of counsel claims raised in Claim One (a).  Even if the Court could construe Kendrick to have fairly presented Claim One (a) in his direct appeal to the Supreme Court of Virginia, it would still be barred from review here. The Supreme Court dismissed his appeal for failing to assign error in compliance with Va. Sup. Ct. R. 5:17(c)(1)(i).  (ECF No. 20–3, at 1.)  Virginia Supreme Court Rule 5:17(c) is an independent and adequate state ground for dismissal, and thus, the Court is barred from reviewing this claim. *See Mueller v. Angelone*, 181 F.3d 582–84 (4th Cir. 1999).

[7] The Court notes that Kendrick had counsel in his collateral appeal.

654, 661 (6th Cir. 2015) (citations omitted); *Johnson v. Warden of Broad River Corr. Inst.*, No. 12-7270, 2013 WL 856731, at *1 (4th Cir. Mar. 8, 2013) (citing *Martinez*, 566 U.S. at 16).   Because the default of Claim One (a) occurred on appeal, and ineffective assistance of appellate counsel cannot serve as cause for the procedural default of Claim One (a), this claim is barred from review here.   *See Norris v. Brooks*, 794 F.3d 401, 405 (3d Cir. 2015) (citations omitted) (explaining that *Martinez* "applies only to attorney error causing procedural default during initial-review collateral proceedings, not collateral appeals"); *Atkins*, 792 F.3d at 661; *Johnson*, 2013 WL 856731, at *1. Accordingly, Claim One (a) will be DISMISSED.[8]

### III.  APPLICABLE CONSTRAINTS UPON HABEAS REVIEW

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).   The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, it provided that, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence."   *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)).   Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[8] Alternatively, when Officer Schrock conducted the more thorough search of Kendrick's person that Kendrick objects to, Kendrick was already under arrest, and Officer Schrock had found a packet of drugs outside of his police cruiser that Kendrick clearly discarded, and a suspected marijuana blunt in the vehicle.   *See* Part IV.B.   Thus, even if this claim were not defaulted and barred from review here, it lacks merit because counsel would have reasonably believed that Officer Schrock had probable cause at that point to search Kendrick.   *See id.*

> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

## IV.   INEFFECTIVE ASSISTANCE OF COUNSEL

### A.   Applicable Law

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'"  *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689).  The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice.  *Id.* at 697.

### B.   Ineffective Assistance With Regard to Inventory Search

In Claim One (b), Kendrick argues that counsel rendered ineffective assistance when she failed to "address violations of the Fourth Amendment . . . [and] failed to file any search and seizure pretrial motions, search and seizure suppression motions, and failed to object to any search

and seizure issues during trial" pertaining to the inventory search of the vehicle.  (ECF No. 11, at

6.)

### 1.      The Circuit Court's Conclusions

The Circuit Court held an evidentiary hearing on this claim.  After the evidentiary hearing

the Court found as follows:

> Kendrick was initially apprehended on June 8, 2013 by Deputy Joseph Schrock of the Fauquier County Sheriff's Department, who was on motor vehicle patrol.  He passed the Petitioner [Defendant] while driving his vehicle in the opposite direction.  He recognized the Petitioner, effected a stop and confirmed Kendrick's status as driving on a revoked or suspended license.  He placed Kendrick under arrest, handcuffed him, placed him in the rear back seat of his cruiser and requested back up assistance.
>
> Deputy Schrock decided to impound the vehicle under Va. Code § 46.2–301.1(A) and oversee the inventory of the contents prior to its being towed to an impound lot.  Upon return to his cruiser Schrock observed an orange plastic baggy on the ground which he recognized as the kind used for containing illegal narcotics (transcript 2018 p.47).  Shortly afterward he removed the Petitioner from the vehicle and observed a "white pill setting [sic] right where [Kendrick] was seated." (transcript 2018 p.49).  It was subsequently determined to be hydromorphone.
>
> In the process of inventorying the Petitioner's car, containers with false bottoms and more baggies were found, together with a marijuana "blunt", heroin and suboxone patch.
>
> Petitioner alleges that he was rendered ineffective assistance of counsel because, *inter alia*, his attorney failed to seek suppression of the evidence of the containers recovered from the automobile.  At the recent evidentiary hearing held on this Petition, Counsel for the Petitioner justified her choice not to file the suppression motion on the basis that she "concluded that a motion to suppress would be pointless and fruitless." (transcript 2018 p.19).  She further justified her actions on three (3) grounds:  (1) Deputy Schrock established probable cause to search the vehicle, (2) the automobile exception came into play because of exigent circumstances, and (3) the discovery of the evidence would have been inevitable.

> <u>Ineffective Assistance of Counsel</u>
> <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) is the seminal case on the issue of ineffective assistance of counsel.  To be successful, the Petitioner (formerly the Defendant) must satisfy a two-pronged test.  First, he must show that his attorney made an error so serious that counsel was not functioning as a "counsel' as guaranteed by the Sixth Amendment, *Id.* at 687.  Secondly, he must show a "reasonable probability that, but for counsel's errors, the results would have been different." *Id.* at 694.  On these issues the Petitioner had the burden of proof.  These are high barriers to overcome.

Impeachment

Petitioner's previous trial counsel testified during her examination, that the facts heretofore set forth, permitted a car to be impounded under Va. Code § 46.2–301.1(A).  Upon further examination by Petitioner's habeas counsel she retracted that assertion and conceded that § 46.2–301 did not allow impoundment under these facts.  Andrew Elders, Petitioner's expert also testified that impoundment was not permitted.  Va. Code § 46.2–301(A)(iv) in pertinent part states that impoundment is permissible for up to three days, if a person drives a vehicle without an operator's license in violation of § 46.2–300 (driving without a license) after he has previously been convicted of such offense or a substantially similar law.  The Petitioner was arrested for driving under a revoked license under § 46.2–301, not on driving without a license as provided in § 46.2–300.  While the offenses are similar, they are distinct.  § 46.2–301.1 does not incorporate § 46.2–301.  There was no evidence presented that Kendrick was previously convicted under § 46.2–300.  Therefore, there was no justifications for impoundment under that section of the Code, as stated by Officer Schrock.

However, the reason given by Officer Schrock is not the only possible reason to impound a vehicle.  A vehicle may be lawfully impounded when a defendant is arrested and taken into custody and there is no one available to remove the vehicle to a safe location.  Cabbler v. Commonwealth, 212 Va. 520 (1971).  Under application of the "right result for the wrong reason" analysis the impoundment of the vehicle was not illegal as far as the ensuing action of the arresting officer was concerned.  See eg. Ricks v. Commonwealth, 290 Va. 470, 480 (2015).

The Petitioner was alone in his vehicle.  He was being arrested and placed in custody.  Further he had a dog and personal property in the car that could warrant protection.  A temporary impoundment was authorized under these facts.  Williams v. Commonwealth, 42 Va. App. 723 (2004).  The Williams case authorizes an impoundment, but provides the police should have a written policy as to any inventory that is conducted by the police.  No written  policy was requested by that counsel, which would have been appropriate at the time to confirm that such a policy in fact existed.

For a warrantless inventory to be validly conducted (1) the vehicle must be lawfully impounded, (2) the impoundment and search must be conducted pursuant to standard police procedures and (3) the impoundment and search must not be a pretext for an improper motive.  Id. at 731.

The first prong of this test has clearly been met.  The car was lawfully impounded, albeit for the wrong reason.  The second prong was subject to some ambiguity.  When first queried by Petitioner's Counsel, Deputy Schrock (who is no longer employed as a Fauquier County Deputy) stated he did not "recall" any policies of the Sheriff's department in existence regarding removal of the property (transcript 2018 p.91).  However, in cross examination, the Deputy was presented a copy of the policies in force at that time and he then recalled being 'aware' of these policies (transcript 2018 p.108, Defendant's Exhibit 2).  Upon review of

11

Exhibit 2 the policies appear to be sufficiently in conformity with Williams v. Commonwealth, 42 Va. App. 723 (2004) and Cantrell *supra*.

In addition, a proper inventory must be made out. The inventory (2018 Respondent's Exhibit (#1)) is difficult to read. However, it does exist and its adequacy was not challenged. It is therefore sufficient to satisfy the inventory requirement.

Finally, the search must not be a pretext for an improper investigatory search. This standard is juxtaposed against the fundamental proposition that "an officer's subjective motivations are not dispositive. Rather police actions are to be tested under a standard of objective reasonableness without regard to the underlying intent or motivations of the officers involved." (cite omitted) Poindexter v. Commonwealth, 16 Va. App. 730, 734 (1993). "Objective unreasonableness remains the linchpin of determining the validity of actions taken under the community caretaker doctrine." Cantrell, 65 Va. App. at 64. The discovery of drug paraphernalia and drugs was an objectively reasonable standard justifying police in searching the vehicle.

In the Cantrell case, the trial court was reversed where the police department failed to have a written policy detailing the methods by which an officer must conduct the search. 65 Va. App. at 58. Further Cantrell was a case of first impression in Virginia regarding the adequacy of standardized procedures. *Id.* at 61. To determine the sufficiency of the representation, counsel's performance must be evaluated from her perspective at the time of representation. Strickland, 466 U.S. at 689. Defense counsel did not have the advantage of the analysis of the Cantrell case at the time of jury trial.[9]

But a written policy was produced at the Habeas hearing. Thus, the impoundment issue did not mandate filing a suppression motion, and failure to do so does not require a finding of ineffective assistance of counsel by the court.

<u>Exigent Circumstances</u>

The second justification for counsel failing to seek suppression of the evidence as being futile, was the allegation that the search was protected under the automobile exception to the search warrant requirement of the Fourth Amendment.

Carroll v. United States, 267 U.S. 135 (1925) was the first case to allow warrantless searches of automobiles as long as there was probable cause to believe the automobile contained contraband and could be quickly moved out of the locality. Over time this has resulted in almost unfettered freedom by police to conduct warrantless searches, provided there is probable cause to believe that an automobile contains evidence of a crime. Hamby v. Commonwealth, 222 Va. 257, 260 (1981); LaFave, Search and Seizure, p. 730 (2012).

Here there was evidence that a small container used to package drugs was found near the police cruiser, together with an opioid substance in the seat of the cruiser (presumably previously in one of his pockets) adjacent to the Petitioner. Under Chambers v. Maroney, 399 U.S. 42 (1970) for an effective warrantless

---

[9] The law was set forth in Williams *supra*, and Cantrell did not alter that, even though the present case was tried before Cantrell was decided.

automobile search to be lawful it must be conducted "immediately." That occurred here.

On rare occasions suppression motions of searches conducted under the automobile exception can be successful, for example, see 584 U.S. Collins v. Virginia, _____ 161027 (2018), in which the Virginia Supreme Court (Collins v. Commonwealth, 992 Va. 486 (2016)) was reversed.[10]  However, such successes are too few and far between to give rise to a failure of effective representation "under prevailing norms,"  Knowles v. Mirzayance, 556 U.S. 111, 124 (2009).

### Inevitable Discovery

Based upon the error of the officer for his reasoning behind impounding the vehicle, it would have been good protocol for defense counsel to have filed a suppression motion and require the prosecution to justify its actions.  However, even if the inventory search was improper, it was conceded by the Petitioner's expert that the discovery of drugs outside of the vehicle would have created probable cause to authorize a search (transcript 2018 p.77), and thus resulting in inevitable discovery of the illegal drugs.

Although there were glitches along the way, a litigant is entitled to a fair trial, not a perfect one.  There is inadequate evidence to suggest that trial counsel's representation fell below an "objective standard of reasonableness", Shaikh v. Johnson, 276 Va. 537, 544 (2008), and thus her "not functioning as counsel" as required by Strickland.

(ECF No. 20–5, at 6–10 (first and third alterations in original) (footnote numbers altered from original).)[11]  As discussed below, the Court discerns no unreasonable determination of law or fact in the conclusion that counsel was not ineffective for failing to file a motion to suppress the inventory search.  See 28 U.S.C. § 2254(d)(1)–(2).

With respect to the Circuit Court's findings about an officer's authority to impound and conduct an inventory search on a vehicle under Virginia law, the Court defers to those findings and will not focus on those here as they do not control the Circuit Court's ultimate conclusion that

---

[10] Even under this case, the U.S. Supreme Court characterized the Constitutional violation as under the sanctity of the curtilage, not as a search of the motor vehicle as held by the Virginia Supreme Court.

[11] The Supreme Court of Virginia refused Kendrick's petition for appeal on this claim.  (ECF No. 20–7, at 1.)

counsel was not ineffective.[12]  Rather, counsel also explained that she believed that any attempt to suppress the evidence found as a result of the search would be "pointless and fruitless" because she believed that "(1) Deputy Schrock established probable cause to search the vehicle, (2) the automobile exception came into play because of exigent circumstances, and (3) the discovery of the evidence would have been inevitable."  (ECF No. 20–5, at 7.)  The Circuit Court's determination that counsel was not ineffective rested on these conclusions by counsel.

## 2.      Counsel's Testimony

During the habeas hearing on this claim, counsel[13] explained that she considered filing a motion to suppress after reviewing the dash cam video of the stop.  (June 11, 2018 Tr. 18.)  In preparation for the case, she viewed the dash cam video several times.  (June 11, 2018 Tr. 35.)  Counsel indicated that she conducted extensive research on whether there were any Fourth Amendment issues including "whether the stop was proper," and on "inventory search[es and] automobile exceptions."  (June 11, 2018 Tr. 18.)  Counsel admitted that she spent "[h]ours" conducting legal research because she "was very nervous about this being [her] first jury and literally spent hours and hours and hours on this case."  (June 11, 2018 Tr. 35.)  Counsel "concluded that a motion to suppress would be pointless and fruitless . . . [b]ecause after having reviewed the preliminary hearing notes and reviewing the dash cam [she] believe[d] that there was a very delineated point where Deputy Schrock established probable cause to search the vehicle." (June 11, 2018 Tr. 19.)  Counsel explained that "Deputy Schrock had placed Mr. Kendrick in the

---

[12] The Circuit Court determined that both Deputy Schrock and counsel were incorrect that an impound search was permitted for a driving on a suspended license offense.  The Court defers to those findings because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (citations omitted).

[13] Ms. Clay was Kendrick's third court-appointed attorney.

back of the cruiser" and "start[ed] a search" of the vehicle that Mr. Kendrick was driving.  (June

11, 2018 Tr. 19.)[14]  At that point, Kendrick was under arrest for driving on a suspended license.

Counsel noted:

> At some point [Deputy Schrock] returned to the cruiser.  When he approached the
> back of the cruiser he saw a baggie on the ground that hadn't been there when he
> originally placed Mr. Kendrick in the cruiser.  He took Mr. Kendrick out of the
> cruiser and after he took him out he noticed a pill on the back seat that had not been
> there prior.  That's what his testimony was and that's basically what the dash cam
> ferreted out.  I believe at that point he had probable cause to search the automobile.
>      And then the automobile exception came into play at that point because of
> the exigent circumstances.

(June 11, 2018 Tr. 19–20.)  Counsel explained that she believed the deputy had probable cause to

search Kendrick's vehicle for contraband after Kendrick dropped drugs on the ground and in the

police cruiser.  (June 11, 2018 Tr. 31–32.)  When asked whether she believed it would have been

prudent for the deputy to obtain a warrant as Kendrick was already in the back of the police cruiser,

she explained, "[w]ell, that's when the exigency of the vehicle becomes [sic] in play."  (June 11,

2018 Tr. 22 (second alteration in original).)  She noted that "the case law starting back from *Carroll*

going to *Chambers* and all the way through, the vehicle itself is inherently mobile and that creates

the exigency."  (June 11, 2018 Tr. 27.)

    Counsel also testified that she did not file a motion to suppress because the inevitable

discovery doctrine applied.  (June 11, 2018 Tr. 28.)  Counsel explained that "[f]or one, you can

hear Officer Schrock on the dash cam say that the vehicle was going to impounded, towed and

impounded.  And the contraband that was in the vehicle would have been discovered and, you

know, that is an exception to the warrantless search rule."  (June 11, 2018 Tr. 28.)  Counsel also

---

[14] After Deputy Shrock found the baggie on the ground and the pill, Kendrick stated that Deputy
Shrock could search the car.  Although this was not a reason counsel provided for not filing a
suppression motion, at this point, Deputy Shrock could lawfully search the car due to Kendrick's
consent.  *See Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973)

testified that on the dash cam video, Kendrick identified that the property in the vehicle belonged to him.  (June 11, 2018 Tr. 29.)

Counsel discussed filing a motion to suppress with Kendrick.  (June 11, 2018 Tr. 36.)  She explained that Kendrick's

> main concern was the way he was treated on the physical search.  That he felt that, you know, he had been humiliated and that other people had seen him being searched on the side of the road.  And he wanted to file a civil claim against Deputy Schrock and the department. . . .  [T]hat's where his main focus of his concerns were.

(June 11, 2018 Tr. 36.)  Counsel indicated that because of Kendrick's concerns, she "focus[ed her] efforts on the . . . alleged strip search and impropriety of the search of his person in investigating the motion to suppress as well."  (June 11, 2018 Tr. 36.)  Counsel explained that "at [her] own cost, [she] had an investigator go out to the scene to see if they could find a witness, the neighbors that had allegedly been out there and in addition to that did research on, you know, going from Terry pat down to the more extensive searches just to be sure there was nothing there."  (June 11, 2018 Tr. 36.)  Counsel also reviewed the tape of the preliminary hearing, and the handwritten notes from the preliminary hearing of Kendrick's original counsel from the public defender's office.  (June 11, 2018 Tr. 37.)  Counsel noted that she believed the car was going to be impounded anyhow and therefore the impoundment would have led to an inevitable discovery of the drugs, but she agreed that "the main reason that [she] didn't file a motion to suppress was because of [her] belief that there was probable cause."  (June 11, 2018 Tr. 38.)

### 3.    The Circuit Court's Conclusion Was Not Unreasonable

At the time when Deputy Schrock placed Kendrick in the police cruiser, Kendrick was under arrest for driving on a suspended license, and it was approximately his eighth offense.  (June 11, 2018 Tr. 88.)  At that point, Deputy Schrock intended to impound the vehicle.  Deputy Schrock

believed that he was required to impound the car based on the violation of driving on a suspended license and that impoundment would result in an inventory search. (June 11, 2018 Tr. 88–90.) Deputy Schrock placed Kendrick in the car and began the inventory search during which Deputy Schrock found a suspected marijuana blunt. (June 11, 2018 Tr. 98.) The Circuit Court later concluded that the impoundment of the vehicle and the inventory search were not authorized under § 46.2–301, the code section criminalizing driving on a suspended/revoked license. (*See* ECF No. 20–5, at 7.)[15]

However, as Deputy Schrock walked back to the cruiser to speak to Kendrick, who was in custody for the suspended license offense, he observed "an orange baggie with narcotics" on the ground and a "white pill on the back seat of [his] car." (June 11, 2018 Tr. 98–99.) The window of the police cruiser was down. (June 11, 2018 Tr. 99.)[16] This gave Deputy Schrock probable cause to search the vehicle under the automobile exception to the warrant requirement. *See Chambers v. Maroney*, 399 U.S. 42, 50 (1970) (providing that, when officers have probable cause to believe that a car contains evidence of a crime, the officers may search the parts of the car which might conceal that particular kind of evidence). The various drugs and paraphernalia in the vehicle would have been found at that time.

The "inevitable discovery" doctrine provides that "evidence unlawfully obtained is admissible '[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means.'" *United States v. Thomas*, 955 F.2d 207, 209 (4th Cir. 1992) (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)).

---

[15] As explained previously, this Court will not review the Circuit Court's conclusion on a matter of state law. *See supra* n.12 (citing *Estelle*, 502 U.S. at 67–68).

[16] Kendrick had asked Deputy Schrock to roll the window down and Deputy Schrock obliged. After Deputy Schrock left the cruiser and was out of sight, a great deal of movement and cursing can be heard on the audio of the dash cam.

"[T]he premise of the inevitable discovery doctrine is that the illegal search played no real part in discovery of incriminating evidence.  Only then, if it can be shown that the taint did not extend to the second search, would the product of the second search be admissible." *Id.* (quoting *United States v. Whitehorn*, 813 F.2d 646, 650 (4th Cir. 1987)).

Although Deputy Schrock's initial start of the inventory search may not have been authorized by Virginia Code section § 46.2–301, the drugs found in the vehicle inevitably would have been discovered.  Deputy Schrock first observed drugs on the ground outside of the police cruiser and the pill on the back seat of the cruiser.  At that point, counsel reasonably determined that Deputy Schrock had probable cause to search Kendrick's vehicle.  Thus, the Circuit Court's determination that counsel was not deficient when she decided to forego filing a motion to suppress based on her belief that Deputy Schrock had probable cause to search the car was not an unreasonable application of law or fact.

Additionally, the "inventory search" is another recognized exception to the warrant requirement, *United States v. Banks*, 482 F.3d 733, 738–39 (4th Cir. 2007) (citing *South Dakota v. Opperman*, 428 U.S. 364, 374–76 (1976)), used when police "perform inventory searches when they impound vehicles or detain suspects." *United States v. Matthews*, 591 F.3d 230, 235 (4th Cir. 2009) (citations omitted).  "For the inventory search exception to apply, the search must have 'be[en] conducted according to standardized criteria,' such as a uniform police department policy, and performed in good faith." *See id.* ((internal citations omitted) (alteration in original).)

> "The existence of . . . a [standardized criteria] may be proven by reference to either written rules and regulations or testimony regarding standard practices."  To justify a warrantless search, standardized criteria must sufficiently limit a searching officer's discretion to prevent his search from becoming "a ruse for a general rummaging in order to discover incriminating evidence."

*See id.* ((internal citations omitted) (alteration in original) (omission in original).

18

The Circuit Court also concluded that, because Deputy Schrock observed the drugs on the ground and in his police cruiser, he was permitted to impound the vehicle and conduct an inventory search of the vehicle. The various drugs and paraphernalia in the vehicle would have been found at that time. The Commonwealth was not required to "provide a written impoundment-and-inventory policy or elicit step-by-step testimony concerning such a policy to meet its burden under the inevitable-discovery doctrine." *United States v. Bullette*, 854 F.3d 261, 267 (4th Cir. 2017). Nevertheless, Deputy Schrock testified that there was a procedure for inventorying cars for impoundment and he completed an inventory sheet prior to impounding the vehicle. (June 11, 2018 Tr. 89–90, 103–04, 107–08.)

The fact that Kendrick had another criminal defense attorney testify that he would have filed a motion to suppress based on the inventory search of the vehicle does not show that the state court's determination that Kendrick's counsel was not deficient was unreasonable. *See Strickland*, 466 U.S. at 689 (explaining that there are "countless ways to provide effective assistance of counsel in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.") "[U]nlike a later reviewing court [or attorney], the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.'" *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Strickland*, 466 U.S. at 689)).

The Circuit Court concluded that counsel clearly misunderstood the Virginia law pertaining to when an officer may impound a vehicle, and likely should have filed a suppression motion on the ground that Deputy Schrock was not permitted to impound and subsequently inventory the vehicle on an offense of driving on a suspended license. However, the Circuit Court found that

19

counsel's decision to forego filing a motion to suppress was not unreasonable under the circumstances, nor was Kendrick prejudiced. The Court acknowledges that this is a difficult record and that counsel's decision not to file a motion to suppress is certainly questionable. However, it is not this Court's place in § 2254 review to second-guess merely questionable performance. Rather, under this Court's review pursuant to § 2254, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington*, 562 U.S. at 101. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state's decision. *See id.* (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Here, the Circuit Court's determination that counsel rendered constitutionally effective assistance is not unreasonable. Accordingly, Claim One (b) will be DISMISSED.

### C.   Ineffective Assistance With Regard to Deputy Schrock's Testimony

In Claim Two, Kendrick argues that counsel rendered ineffective assistance when she "failed to object to the prosecution's knowing[] use of false testimony" (ECF No. 11, at 15) provided by Officer Schrock about:  (a) when he learned that Kendrick was driving with a suspended license (*id.*); (b) the speed Kendrick was driving (*id.* at 16); and, (c) the search of Kendrick and the vehicle (*id.* at 15–16.) Kendrick argues that Officer Schrock "perjured himself with trial testimony that contradicted both his earlier testimony at the preliminary hearing and the actual events that were recorded on the police dash cam video." (*Id.* at 15.) The Circuit Court found these claims lacked merit, explaining:  "Concerning the balance of the allegations[,] the

Petitioner has failed to demonstrate that the officer's testimony was false or that the Petitioner was prejudiced as a result." (*See* ECF No. 20–4, at 2.) The Court discerns no unreasonable determination of law or fact in the Circuit Court's conclusion. *See* 28 U.S.C. § 2254(d)(1)–(2).

"[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State," violates the Due Process Clause. *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *see also Badsen v. Lee*, 290 F.3d 602, 614 (4th Cir. 2002). To establish a due process violation, Kendrick must show that: (1) perjured testimony was presented; (2) the prosecution knew the evidence was false; and, (3) there is a "reasonable likelihood that the false testimony could have affected the judgment of the jury." *Boyd v. French*, 147 F.3d 319, 330 (4th Cir. 1998) (citations omitted). However, "[m]ere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987) (citing *Overton v. United States*, 450 F.2d 919, 920 (5th Cir. 1971)). As discussed below, counsel cannot be faulted for failing to "object" to the allegedly perjured testimony provided by Officer Schrock. At most, Officer Schrock's testimony was inconsistent. Thus, counsel cannot be faulted for raising a meritless perjury objection, and Kendrick was not prejudiced.

### 1.     Stop of Kendrick (Two (a))

Kendrick contends that, during trial, Officer Schrock testified that he stopped Kendrick for failing to use his turn signal, but "in the dash cam video and at the preliminary hearing, Schrock says absolutely nothing about stopping [Kendrick] for failure to utilize a turn signal." (ECF No. 11, at 23.) Instead, Kendrick suggests that during the dash cam video, Schrock indicated that he was "initiating the . . . traffic stop . . . because he was told to be on lookout for [Kendrick] in a white Land Rover." (*Id.* at 15.) Kendrick also takes issue with Schrock's alleged statement that

21

he had run Kendrick's information through the dispatch system before he stopped Kendrick. (*Id.*) Kendrick contends that he was not driving a car he owned, so it would have been impossible to run Kendrick's information, and that Kendrick had already been pulled over and was in handcuffs in the police car when Schrock learned that Kendrick was driving on a suspended license. (*Id.*) Kendrick faults counsel for not objecting to this allegedly perjured testimony.

Contrary to Kendrick's allegations, Officer Schrock testified that he was on routine patrol and observed Kendrick driving a white Land Rover past him on the two-lane road. (May 22, 2014 Tr. 39–40, 74.) Officer Schrock was familiar with Kendrick and recognized Kendrick as he drove past Officer Schrock. (May 22, 2014 Tr. 40, 74.)[17] Officer Schrock turned around to follow Kendrick and ran Kendrick's information through the dispatch system and "discovered he was still revoked." (May 22, 2014 Tr. 41.) Officer Schrock explained that he conducted a traffic stop because he believed Kendrick to be operating a vehicle without a valid operator's license, and

---

[17] Kendrick had "nine or 10 prior convictions for driving on a suspended license." (May 22, 2014 Tr. 72.) Presumably, Officer Schrock knew Kendrick did not have an active license when he observed Kendrick driving and the dash cam reflects that Officer Schrock was aware that Kendrick had been driving a white Land Rover and was told to be on the lookout for it. More information surrounding what police knew about Kendrick leading up to the stop is found in the factual basis for Kendrick's guilty plea to distribution of heroin. The Commonwealth proffered as follows:

> Had this matter proceeded to trial, the Commonwealth's evidence would have established that on June 5, 2013, an informant working with detectives from the Fauquier County Sheriff's Office made arrangements with the defendant, Michael Kendrick, to purchase heroin. The informant went to the defendant's apartment on Bristerburg Road in Fauquier County and there, he entered the apartment and purchased four bags of heroin for $100.
>       The informant left the apartment and turned the bags of heroin over to Detective Sealock of the Fauquier County Sheriff's Office. The bag of heroin was sent to the Department of Forensic Science and confirmed positive as such.

(May 28, 2014 Tr. 10–11.) Officer Schrock observed Kendrick driving without a license and initiated the stop a mere three days later, on June 8, 2013. Clearly, counsel would not have wanted to have this information come out during trial in front of the jury. Counsel also wisely eschewed asking more searching questions of Officer Schrock pertaining to how he knew her client.

because Kendrick failed to utilize a turn signal.  (May 22, 2014 Tr. 41–42.)  Kendrick told Officer

Schrock that "he knew he shouldn't be driving, he knew his license was suspended."  (May 22,

2014 Tr. 43–44.)  On cross-examination, counsel questioned Officer Schrock about his ability to

identify Kendrick while both parties were traveling over 55 miles per hour.  (May 22, 2014 Tr.

73–74.)  Officer Schrock stated that he was able to identify Kendrick as the driver and ran his

information through the NCIC system which revealed Kendrick was probably driving on a

suspended license. (May 22, 2014 Tr. 74.)  Although Kendrick claims that the dash cam suggests

that Officer Schrock only learned that Kendrick was driving on a suspended license after he pulled

Kendrick over, the video does not show that.  At most, the dash cam video shows that Officer

Schrock had already called dispatch for Kendrick's information before he left his police cruiser to

speak with Kendrick, and then dispatch confirmed that Kendrick had around eight priors for

driving on a suspended license.  Kendrick fails to demonstrate that Officer Schrock's testimony

about the reason for the stop was known by the Commonwealth to be false.  Counsel attempted to

discredit Officer Schrock's testimony about his reason for stopping Kendrick, and Kendrick fails

to identify what more counsel could have done to try to cast a doubt on the officer's testimony.

Counsel cannot be faulted for failing to object to Officer Schrock's testimony for the reasons

suggested by Kendrick.  Accordingly, Kendrick demonstrates neither deficiency of counsel or

resulting prejudice.  Claim Two (a) lacks merit and will be DISMISSED.

### 2.    Officer Schrock's Speed

In Claim Two (b), Kendrick contends that during the preliminary hearing, Officer Schrock

stated that he did not know how fast he personally was driving, but during trial, he testified that he

was traveling at 57 miles per hour, and that counsel should have objected to this false testimony.

(ECF No. 11, at 16.)  Officer Schrock testified during trial that the posted speed limit was 55 miles

per hour and that he estimated his own speed to be 57 miles per hour.  (May 22, 2014 Tr. 74.)

When asked "what would you estimate the defendant's speed to be" by defense counsel, Officer

Schrock specifically testified, "I don't recall."  (May 22, 2014 Tr. 74.)  The Court fails to discern,

and Kendrick fails to identify, how Officer Schrock's estimation of his speed during trial could

amount to false testimony that could have had a reasonable likelihood of affecting the jury's

verdict. *Boyd v. French*, 147 F.3d 319, 330 (4th Cir. 1998).  At most, his testimony was slightly

inconsistent.   Thus, counsel cannot be faulted for failing to raise a meritless objection.

Accordingly, Claim Two (b) lacks merit and will be DISMISSED,

### 3.    Testimony Pertaining to Who Searched Kendrick and the Car

Finally, in Claim Two (c), Kendrick argues that counsel failed to object to Officer

Schrock's false testimony when he "state[d] that he did not recall searching [Kendrick] when he

was taken out of the truck, but on the dash cam video, and at trial, he state[d] that he did do a

search." (ECF No. 11, at 16 (internal citations omitted).)  The Court fails to discern why Kendrick

believes Officer Schrock testified falsely during trial.  During trial, Officer Schrock testified that

after he had asked Kendrick to exit the vehicle, he conducted "a pat-down search for officer safety"

that involved "checking the exterior of the waistband, the pant legs, the shirt . . . into his pockets"

looking for weapons.  (May 22, 2014 Tr. 75–76.)  Officer Schrock indicated that he did not recall

whether he conducted a secondary search but admitted that it was possible he conducted a search

incident to arrest, which "would include going in the pockets, the checking the inside of the

waistband, the shoes, the socks."  (May 22, 2014 Tr. 76–77.)

During cross-examination, counsel attempted to discredit Officer Schrock's recollection

about the sequence of the searches of Kendrick and to highlight potential inconsistencies in his

testimony.  Counsel asked Officer Schrock about whether the dash cam video or audio recording

would establish that he "got [Kendrick] out of the [police] car and . . . conducted a very, very thorough search, and then you put him back in the car . . . that's when the pill was discovered." (May 22, 2014 Tr. 79.)  Officer Schrock indicated that it would not, because the dash cam was not facing backwards at the police cruiser, and that it was "highly possible" that the audio of the recording would also not provide an exact timeline.  (May 22, 2014 Tr. 78, 80.)  Officer Schrock admitted that he stated to Kendrick that he was going to get "really friendly" with him in his search for contraband, including looking for "narcotics shoved in different areas of [his] body," including "between [his] testicles or anything like that . . . to make sure they're not hiding anything else." (May 22, 2014 Tr. 80–81.)   Counsel indicated that, at that point, the audio of the dash cam, indicated that after that search, Officer Schrock went to place Kendrick back in the cruiser and he stated, "Whoa, whoa, whoa.  What's that pill?"  (May 22, 2014 Tr. 81.)  Officer Schrock agreed that counsel's description of the sequence of events was "possible, yes, ma'am."  (May 22, 2014 Tr. 81–82.)  Thus, Officer Schrock testified that he could have conducted the search after Kendrick had been placed in the police car.

On redirect, the prosecutor clarified with Officer Schrock the sequence leading to the second search:

> Q.     Just a brief, very brief, follow-up.  The defendant had asked to have the back window rolled down --
> A.     Yes, sir.
> Q.     -- and you obliged.  And then you turned your back on him for a little while?
> A.     I did.
> Q.     And then, when you came back and you got him out -- after noticing the packet on the ground, that's when you got him out of the vehicle and performed a more -- I guess a more thorough search?
> A.     Yes, sir.
> Q.     And then, before putting him back in the vehicle, that's when you noticed the pill?
> A.     That's correct.

25

(May 22, 2014 Tr. 87–88.)[18]  It is unclear what Kendrick is trying to argue was false testimony. Therefore, counsel cannot be faulted for failing to raise this nebulous objection, nor was Kendrick prejudiced.  Moreover, the Court fails to discern how Officer Schrock provided false testimony, or on what further ground counsel could have questioned Officer Schrock about the sequence of the search.  Accordingly, this aspect of Claim Two (c) lacks merit.

Kendrick also believes Schrock provided false testimony when he indicated that "he found the Comet cans with false bottoms at the preliminary hearing, but at trial he stated that another officer (Deputy Weaver) actually found the Comet container."  (ECF No. 11, at 15.)  The Court fails to discern how testimony about which officer found a container in the vehicle, when there were four officers at the scene and all four were involved in conducting the search of the vehicle (May 22, 2014 Tr. 53–54), was a knowing use of false testimony by the Commonwealth.  Counsel reasonably discerned that any inconsistency here was minor, and it would have no effect on the judgment of the jury.  Kendrick fails to establish any deficiency of counsel or resulting prejudice from counsel's failure to object to this inconsistency.   Accordingly, Claim Two (c) will be DISMISSED.

## V.    CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss (ECF No. 18) will be GRANTED.  Kendrick's claims will be DISMISSED, and his § 2254 Petition will be DENIED.

---

[18] The dash cam video confirms this sequence of events.

The action will be DISMISSED.  A certificate of appealability will be DENIED.[19]

      An appropriate Order shall issue.


                                                       /s/ RCY

                                        Roderick C. Young

Date:   September 16, 2020             United States Magistrate Judge
Richmond, Virginia

---

[19] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1)(A).  A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Kendrick fails to meet this standard.